# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

* * *

| | |
|---|---|
| STEPHEN LAFORGE and BUNNY LAFORGE,<br><br>Plaintiffs,<br><br>v.<br><br>RICHLAND HOLDINGS, INC. d/b/a ACCOUNT CORP OF SOUTHERN NEVADA; RC WILLEY FINANCIAL SERVICES; RANDALL CORPORATION d/b/a BOWEN LAW SERVICES; and CALEB J. LANGSDALE, ESQ. d/b/a LANGSDALE LAW FIRM, P.C.,<br><br>Defendants. | Case No. 2:17-cv-00782-APG-VCF<br><br>**ORDER GRANTING DEFENDANT RICHLAND HOLDING'S MOTION TO DISMISS; GRANTING LANGSDALE'S MOTION TO DISMISS IN PART AND DENYING LANGSDALE'S MOTION TO STRIKE; AND DENYING SUMMARY JUDGMENT MOTIONS AS MOOT**<br><br>(ECF Nos. 9, 14, 22, 53, 54) |

Plaintiffs Stephen and Bunny Laforge sue defendants Richland Holdings, Inc. d/b/a Account Corp of Southern Nevada (AcctCorp), RC Willey Financial Services, Bowen Law Services, and Langsdale Law Firm, P.C. for alleged actions arising from the collection of a debt. The Laforges claim that all defendants are liable for violations of the Fair Debt Collection Practices Act (FDCPA), the Nevada Deceptive Trade Practices Act (NDTPA), abuse of process, and civil conspiracy.

AcctCorp filed a motion to dismiss the complaint, arguing that the Laforges' claims are time-barred.[1] Alternatively, AcctCorp argues that all of the Laforges' claims are barred by claim preclusion, the court lacks jurisdiction over the claims under the *Rooker-Feldman* doctrine, and the complaint fail to state claims upon which relief can be granted.[2] All defendants joined in this motion to dismiss.[3] I grant AcctCorp's motion to dismiss, and grant the Laforges leave to amend some of the claims.

---

[1] ECF No. 14.

[2] *Id.*

[3] ECF Nos. 18, 19, 23.

Langsdale filed a separate motion to dismiss, arguing that the Laforges failed to state any claims against it.[4] Langsdale also filed a motion to strike the Laforges' errata (ECF No. 17) because it takes the form of a fully briefed opposition to its motion to dismiss, and was filed late.[5] I deny the motion to strike and grant Langsdale's motion to dismiss with leave to amend the remaining claims not dismissed with prejudice.

I. **BACKGROUND**[6]

In 2014, the Laforges entered into a contract with RC Willey for a line of credit to purchase home furnishing and related goods.[7] By May 2015, the Laforges were delinquent in their payments and had an account balance of $8,562.16.[8] RC Willey assigned the debt to AcctCorp for collection.[9] On October 28, 2015, AcctCorp filed a lawsuit in state court to collect the debt.[10] The complaint demanded payment of $12,843.24, which included "contractual collection fees," plus 24% interest accruing from the date of delinquency until fully paid.[11] Default judgment was entered for AcctCorp on January 7, 2016, and filed on February 24, 2016.[12]

The Laforges initiated this action on March 17, 2017, alleging the following facts. RC Willey's contract with the Laforges is governed by Utah law. Utah law prohibits contractual collection fees for more than 40% of the principal balance of a debt. The collection fee here is approximately 50% of the principal balance, and thus violates Utah law.[13] The Laforges therefore

---

[4] ECF No. 9.

[5] ECF No. 22.

[6] These facts are taken from the Laforges' complaint and the underlying state court docket, and what I may accept as true at the motion to dismiss stage. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). I may take judicial notice of the fact that documents were filed in state court proceedings, but I do not take judicial notice of the truth of the matters stated within those filings. *Lee v. City of L.A.*, 250 F.3d 668, 690 (9th Cir. 2001).

[7] ECF No. 1 at 2; ECF No. 14-1 at 14 (credit application).

[8] ECF No. 1 at 3.

[9] *Id.*

[10] *Id.*

[11] ECF No. 14-1 at 5 (state court complaint).

[12] ECF No. 14-3 at 2 (default judgment order).

[13] ECF No. 1 at 3.

contend that the defendants violated the FDCPA by assessing contractual collection fees that violated Utah law. They further allege that the defendants "unlawfully added additional interests" to the debt, and the default judgment entered against them in state court "included amounts that were improperly calculated and inflated."[14] The defendants also allegedly violated the FDCPA by failing to provide a "validation of debt letter" in compliance with 15 U.S.C. § 1692(g).[15]

The Laforges allege that the defendants (1) "commenced and/or prosecuted legal proceedings against [the Laforges] for the ulterior purpose of collecting unlawful rates of interest and unlawful fees in violation of the FDCPA"; (2) "engaged in unfair and deceptive acts or practices in the conduct of its (sic) commerce and trade through its (sic) unfair and deceptive debt collection and litigation activities in violation of NRS Chapter 598"; and (3) engaged in civil conspiracy by undertaking "a concerted action with the intent" to violate the FDCPA.[16]

## II.   DISCUSSION

### A.   Motion to Strike

Langsdale filed its motion to dismiss on April 10, 2017.[17] Plaintiff's counsel, Vernon Nelson, filed an opposition on April 25, 2017 at around 4 a.m.—four hours after it was due.[18] The filed opposition is missing its introduction, the majority of its citations, numerous arguments, and exhibits it had referenced in arguments.[19] On April 28, 2017, two business days before Langsdale's reply was due,[20] Nelson filed an "Errata," which contains another opposition with additional arguments, authorities, and citations.[21]

---

[14] *Id.* at 4.

[15] *Id.* at 3, 4-5.

[16] *Id.* at 6-8.

[17] ECF No. 9.

[18] *See* ECF No. 11.

[19] *Id.*

[20] Langsdale repeatedly states that its reply was due on Monday, May 1, 2017, and that the errata was filed only one business day before the reply was due. The reply was actually due on May 2, 2017. *See* ECF No. 11; L.R. 7-2(b) (stating that the reply is due seven days after service of the response).

[21] ECF No. 17.

Langsdale moves to strike the errata under Local Rule 7-2(g), contending that it amounts to a supplemental brief filed without leave of court. The spend dispute the reason why Nelson's final opposition was filed four days late. I will not delve into those disputes. Because I have already considered substantially identical arguments by the same counsel in *Cox v. Richland Holdings*,[22] and Langsdale's replies to them,[23] I see no reason to ignore them here. Further, the benefit of a fully briefed opposition, while it improves my analysis, does not prejudice Langsdale because I am dismissing all of the Laforges' claims with leave to amend. That is the same result that would have occurred if I did not consider the additional arguments and authority raised in the errata. So I deny Langsdale's motion to strike.

### B. Motion to dismiss standard

A properly pleaded complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief."[24] While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action."[25] "Factual allegations must be enough to rise above the speculative level."[26] To survive a motion to dismiss, a complaint must "contain[] enough facts to state a claim to relief that is plausible on its face."[27]

District courts must apply a two-step approach when considering motions to dismiss.[28] First, the court must accept as true all well-pleaded factual allegations and draw all reasonable inferences from the complaint in the plaintiff's favor.[29] Legal conclusions, however, are not

---

[22] *Cox v. Richland Holdings*, 2:16-cv-2914-APG-VCF, ECF No. 25. The complaint in *Cox* concerns almost identical claims brought against Langsdale and most of the other defendants in this case. Langsdale filed a motion for judgment on the pleadings in *Cox* that raised almost identical arguments to those raised here.

[23] *Id.* at ECF No. 29.

[24] FED. R. CIV. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[25] *Iqbal*, 556 U.S. at 678 (2009).

[26] *Twombly*, 550 U.S. at 555.

[27] *Ashcroft v. Iqbal*, 556 U.S. 662, 696 (2009) (internal quotation marks and citation omitted).

[28] *Id.* at 679.

[29] *Id.*; *Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1247–48 (9th Cir. 2013).

entitled to the same assumption of truth even if cast in the form of factual allegations.[30] Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice.[31] Second, the court must consider whether the factual allegations in the complaint allege a plausible claim for relief.[32] A claim is facially plausible when the complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct.[33] Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but it has not shown—that the pleader is entitled to relief."[34] When the claims have not crossed the line from conceivable to plausible, the complaint must be dismissed.[35] "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the [district] court to draw on its judicial experience and common sense."[36] A complaint or individual claim should be dismissed without leave to amend only when "it is clear . . . that the complaint could not be saved by amendment."[37]

### C. Subject matter jurisdiction

The Laforges allege that the defendants committed four distinct "violations": (1) the "collection fee violation"; (2) the "§ 1692(g) violation"; (3) the "interest fees violation"; and (4) the "default judgment violation."[38] The defendants rely on the *Rooker-Feldman* doctrine to assert that this court does not have subject matter jurisdiction over any of the claims stemming from those "violations." They argue that the Laforges' complaint constitutes a *de facto* appeal of the judgment entered against them in state court.

---

[30] *Iqbal*, 556 U.S. at 679; *Brown*, 724 F.3d at 1248.
[31] *Iqbal*, 556 U.S. at 678.
[32] *Id.* at 679.
[33] *Id.* at 663.
[34] *Id.* at 679 (internal quotation marks and citation omitted).
[35] *Twombly*, 550 U.S. at 570.
[36] *Iqbal*, 556 U.S. at 679.
[37] *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1296 (9th Cir. 1998).
[38] ECF No. 1.

The *Rooker-Feldman* doctrine "prohibits a federal district court from exercising subject matter jurisdiction over a suit that is a *de facto* appeal from a state court judgment."[39] "If a plaintiff brings a *de facto* appeal from a state court judgment, *Rooker-Feldman* requires that the district court dismiss the suit for lack of subject matter jurisdiction."[40] It is "confined to cases . . . brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."[41] "[I]f a federal plaintiff asserts as a legal wrong an allegedly illegal act or omission by an adverse party, *Rooker-Feldman* does not bar jurisdiction."[42] "Thus, even if a plaintiff seeks relief from a state court judgment, such a suit is a forbidden de facto appeal only if the plaintiff *also* alleges a legal error by the state court."[43]

The majority of the Laforges' claims do not collaterally attack the state court judgment. Rather, they complain of allegedly illegal conduct by the defendants to collect the debt, such as failing to provide a validation of debt letter and assessing unlawful collection and interest fees. This is not a forbidden *de facto* appeal of the judgment in the state action, and therefore is not barred by *Rooker-Feldman*.

However, from the pleadings it is unclear if any state law claims stemming from the "default judgment violation" allegations are, in fact, meant to attack the state court judgment. The Laforges allege that "[t]he default judgment obtained against [them] . . . includes amounts that were improperly calculated and inflated."[44] That assertion could imply that the state court default judgment was erroneous for including those amounts, or that the defendants improperly included those amounts in their application for default judgment. The Laforges represent in their

---

[39] *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1139 (9th Cir. 2004) (citation omitted).

[40] *Id.*

[41] *ExxonMobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

[42] *Bell v. City of Boise*, 709 F.3d 890, 897 (9th Cir. 2013) (citing *Noel v. Hall*, 341 F.3d 1148, 1158 (9th Cir. 2003)) (internal quotations omitted).

[43] *Id.* (emphasis in original) (citations omitted); *see also Kougasian*, 359 F.3d at 1140).

[44] ECF No. 1 at 4.

response to the motion to dismiss that none of their factual allegations intend to question the state court judgment, and that they are not asking for a recalculation of the judgment entered against them in state court.[45]  However, that is not at all clear from the complaint.  I grant the Laforges leave to amend their "default judgment violation" allegations (if it is relevant to their state law claims) in a manner that does not run afoul of the *Rooker-Feldman* doctrine.  I have subject matter jurisdiction over the rest of the FDCPA claims under 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claims.

### D. FDCPA's statute of limitation

The defendants next argue that all of the Laforges' claims are time-barred.  FDCPA claims are subject to a one-year limitation period.[46]  Under the discovery rule applied by the Ninth Circuit to FDCPA claims, that limitation period "begins to run when the plaintiff knows or has reason to know of the injury which is the basis of the action."[47]  If an FDCPA claim is time-barred on the face of the complaint, the plaintiff has the burden to show that he or she is entitled to the benefit of the discovery rule.[48]

AcctCorp filed the state-court collection action on October 28, 2015.[49]  The complaint was served on a person of suitable age at the Laforge residence on November 10, 2015.[50]  On December 15, 2015, AcctCorp filed an application for default judgment, which included an affidavit stating the principal balance of the debt and the amount of the contractual collection

---

[45] ECF No. 27 at 10.

[46] 15 U.S.C. § 1692k(d).

[47] *Mangum v. Action Collection Serv., Inc.*, 575 F.3d 935, 940 (9th Cir. 2009); *see also Lyons v. Michael & Assoc.*, 824 F.3d 1169, 1172 (9th Cir. 2016) (holding that the discovery rule applies to all FDCPA claims).

[48] *O'Connor v. Boeing N. Am., Inc.*, 311 F.3d 1139, 1150 (9th Cir. 2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) and *Calif. Sansome Co. v. U.S. Gypsum*, 55 F.3d 1402, 1406–07 (9th Cir. 1995)).

[49] ECF No. 14-2.

[50] ECF Nos. 27-3; 14-4.

fee.[51]  Default was entered for AcctCorp on December 22, 2015, and filed on December 29, 2015.[52]  Default judgment was entered on January 7, 2016, and filed on February 24, 2016.[53]

AcctCorp argues that the Laforges had to know of their FDCPA claims at the latest when default judgment was entered against them on February 24, 2016.[54]  Thus, they had until February 24, 2017 to file their lawsuit, but they missed the deadline by approximately one month.  The Laforges concede that their complaint is time-barred on its face and in light of the judicially noticeable documents attached to AcctCorp's motion and their opposition.[55]  They offer to file an amended complaint that will allege facts asserting that they first learned of their claims in January 2017.[56]  The Laforges do not attach a proposed amended complaint containing these allegations for my consideration, but I will address their argument to determine whether allowing amendment to include such allegations would be futile.

The Laforges do not argue that they were unaware of the state court action.  Rather, they claim that in January 2017, they sought assistance from a credit-repair agency.[57]  The agency referred the Laforges to counsel, who was able to "uncover the violations committed" by the defendants after "hours of combing through the [state-court] pleadings."[58]  The Laforges maintain that, because the clause choosing Utah law was "buried deep in the boilerplate" of RC Willey's contract, and because AcctCorp's complaint and the order for judgment did not specifically state the amount of the contractual collection fee, they could not have known about the violations without the assistance of counsel they retained in January.[59]

---

[51] ECF Nos. 27-5 at 12; 14-1 at 12.
[52] ECF No. 27-4 at 2.
[53] ECF No. 27-5 at 20–21.
[54] ECF No. 14 at 7.
[55] ECF No. 27 at 17.
[56] *Id.*
[57] ECF No. 27 at 17.
[58] *Id.* at 18.
[59] *Id.* at 17-18.

Under the discovery rule, claims arise when a plaintiff, exercising reasonable diligence,[60] knows or has reason to know of the injury that forms that basis of the action, not when he gains a legal understanding of his claims.[61] The Laforges' attempt to save their claims by asserting that they could not have learned about them without a lawyer, whom they retained months after they were subject to a default judgment in state court, is unavailing. The Laforges had all they needed to reasonably discover their claims when the state-court action was commenced and they were served a complaint containing the request for damages far exceeding their principal balance.

Their argument that the exact amount of the contractual collection fee was not included in a validation of debt letter or in the state-court complaint, such that the Laforges could not have discovered its illegality, is also unavailing. The Laforges knew the principal balance of their debt, and therefore would have reason to know that it was significantly less than the $12,843.24 assessed in the complaint. The Laforges' failure to investigate such an inconsistency does not allow them to revive otherwise time-barred claims once they chose to retain counsel.

The Laforges' failure to carefully read the documents filed in the state court action also cannot be a basis for extending the statute of limitations. In December 2015, AcctCorp filed an affidavit breaking down its damages request and showing the exact amount of the principal balance, the contractual collection fee assessed, and other fees.[62] The Laforges do not claim that they lacked access to their contract with RC Willey containing the Utah choice-of-law provision. At that time, if not earlier, the Laforges had reason to know of the injuries that form the bases for the FDCPA claims that rely on the contractual collection fees, interest rates, or default judgment allegations.

---

[60] *See Merck & Co., Inc. v. Reynolds*, 559 U.S. 633, 648 (2010); *O'Connor*, 311 F.3d at 1147 ("[T]he discovery rule provides that a limitations period does not commence until a plaintiff discovers, or reasonably could have discovered, his claim.").

[61] *See Lekas v. United Airlines, Inc.*, 282 F.3d 296, 299–300 (4th Cir. 2002) ("... in order for a claim to exist, the plaintiff must have some elemental knowledge of it. This does not mean, however, that a plaintiff must have complete knowledge of all elements or a legal understanding of the nature of the claim before his claim exists.") (citing *United States v. Kubrick*, 444 U.S. 111, 117 (1979)).

[62] *See* ECF Nos. 27-5 at 12; 14-1 at 12.

However, I cannot find from the face of the complaint that any claims based on alleged § 1692g violations are time-barred. The Laforges have not alleged when any communications by any defendants occurred that could trigger liability under this statute. I thus cannot determine whether that specific claim is time-barred on the face of the pleadings, so I deny the motion to dismiss any § 1692g claims on this basis.

### E. State law claims and statute of limitations

The defendants argue that all of the Laforges' remaining state law claims are predicated on violations of the FDCPA, and therefore must also be dismissed because the FDCPA's one-year limitation period bars those claims.[63] The defendants provide no relevant support for the argument that, because the FDCPA claims are time-barred, all other state-law claims based on the same alleged conduct must also be time-barred.[64] In the absence of any such authority, I decline to apply the FDCPA's limitation period to the Laforges' state law claims.

### F. Claim preclusion

The defendants next argue that all of the Laforges' claims should be dismissed because they should have been raised in the state court action. Under Nevada law,[65] claim preclusion applies when "(1) the parties or their privies are the same, (2) the final judgment is valid, and (3) the subsequent action is based on the same claims or any part of them that were or could have been brought in the first case."[66] Compulsory counterclaims not brought in the first action are barred by claim preclusion.[67]

---

[63] ECF No. 10 at 5-8.

[64] The defendants cite to *Clark v. Musick*, 623 F.2d 89, 92 (9th Cir. 1980) to support this argument. That case dealt with the application of different state law statutes of limitation to one federal statute and found that "inconsistency and confusion would result if a single cause of action created by Congress were fragmented in accordance with analogies drawn to rights created by state law and the several differing periods of limitation applicable to each state-created right were applied to the single federal cause of action." *Id.* This reasoning is not applicable to the question of whether a federal cause of action's limitation period should be applied to state-law claims.

[65] I apply the forum state's law to determine the preclusive effect of a state court judgment. *In re Harmon*, 250 F.3d 1240, 1245 (9th Cir. 2001).

[66] *Five Star Capital Corp. v. Ruby*, 194 P.3d 709, 713 (Nev. 2008) (footnotes omitted).

[67] *Exec. Mgmt., Ltd. v. Ticor Title Ins. Co.*, 963 P.2d 465, 474 (Nev. 1998).

Under Nevada Rules of Civil Procedure (NRCP) 13(a), a claim is compulsory "if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." NRCP 13(a) further instructs that "[a] pleading shall state [any compulsory claim] which at the time of serving the pleading the pleader has against any opposing party[.]" "The definition of transaction or occurrence does not require an identity of factual backgrounds."[68] "Instead, the relevant consideration is whether the pertinent facts of the different claims are so logically related that issues of judicial economy and fairness mandate that all issues by tried in one suit."[69] Because I have dismissed all of the FDCPA claims directly related to the state court action as time-barred, I will focus my analysis only on the still-surviving claims.

Under Nevada law, a claim for abuse of process is not compulsory and is therefore not subject to claim preclusion.[70] The defendants provide no explanation for why the § 1692g claim, which attacks the alleged failure to comply with federal law regardless of whether a state court action for judgment was filed, is so logically related to the state court action to be considered compulsory. While there is some overlap of the issues raised in both cases (i.e., they both relate to the collection of the same debt), "the suit on the debt brought in state court is not logically related to the federal action initiated to enforce federal policy regulating the practices for the collection of such debts."[71] As I discuss below, the Laforges are given leave to amend the deceptive trade practices and civil conspiracy claims, so I will not determine whether claim preclusion bars them at this time.

---

[68] *Mendenhall v. Tassinari*, 403 P.3d 364, 370-71 (Nev. 2017) (citing *Moore v. N.Y. Cotton Exch.*, 270 U.S. 593, 610 (1926)).

[69] *Id.* at 371.

[70] *Exec. Mgmt., Ltd.*, 963 P.2d at 478 (*citing Yaklevich v. Kemp, Schaeffer & Rowe Co.*, 626 N.E.2d 294 (Ohio 1994) (holding under a rule similar to NRCP 13(a) that "abuse of process is not a compulsory counterclaim which must be brought in the underlying litigation") *and* 6 Charles A. Wright et al., Federal Practice & Procedure § 1410 (2d ed. 1990) (stating that claim preclusion "never" bars a party from suing independently on a permissive counterclaim)).

[71] *Peterson v. United Accts., Inc.*, 638 F.2d 1134 (8th Cir. 1981) (finding that similar FDCPA claims were not compulsory to the underlying state debt collection action, and relying on substantially the same "logical relationship" test that both Nevada courts and the Ninth Circuit follow).

### G. Section 1692g

The Laforges allege that all of the defendants "failed to provide [them] with a validation of debt letter in compliance with Section 1692[g] of the FDCPA," and "continued with their efforts to collect the Alleged Debt despite the fact that they failed to comply" with § 1692g. Langsdale moves to dismiss this claim against it because the Laforges do not allege that an initial communication occurred to trigger application of that provision.

Section 1692g requires a debt collector to validate the debt to be collected by providing certain information related to the debt either in the initial communication with the consumer or by providing a written notice within five days after the initial communication.[72] But the Laforges do not sufficiently allege that Langsdale communicated with them in a manner that triggers Langsdale's obligation to send a written validation letter. Instead, they allege only that Langsdale substituted in as Account Corp's counsel of record after default judgment was entered against the Laforges and "continued with its efforts to collect the debt" despite knowing that it did not comply with § 1692g.[73] The FDCPA specifically excludes "communication[s] in the form of a formal pleading in a civil action" from qualifying as an initial communication under § 1692g.[74] So the act of filing a substitution of attorney notice does not constitute an initial communication. Without some allegation that Langsdale communicated with the Laforges, the Laforges cannot maintain a § 1692g claim against Langsdale.

While only Langsdale raises this argument, the § 1692g allegations fail against all of the defendants for the same reason. The complaint contains no facts alleging that any of the defendants communicated with the Laforges outside of court pleadings. So I dismiss this claim against all defendants with leave to amend to add facts, if they exist, showing some initial communication with each defendant sufficient to trigger § 1962g's requirements.

---

[72] *See* 15 U.S.C. § 1692g(a).

[73] ECF No. 1 at 4-5.

[74] 15 U.S.C. § 1692g(d).

### H. Abuse of process

To successfully allege a tort claim for abuse of process under Nevada law, a plaintiff must establish two elements: (1) the defendant had an ulterior purpose in the underlying lawsuit other than resolving a legal dispute, and (2) a willful act in the use of the legal process not proper in the regular conduct of the proceeding.[75] The plaintiff "must provide facts, rather than conjecture, showing that the party intended to use the legal process to further an ulterior purpose."[76] An action for abuse of process hinges on misuse of regularly issued process, in contrast to malicious prosecution, which rests upon wrongful issue of process.[77] The mere filing of a complaint with malicious intent is insufficient to state an abuse of process claim.[78] Rather, there must also be some act after filing that abuses the process.[79]

The Supreme Court of Nevada has found improper willful acts where a defendant commits flagrant or extraordinary acts that pervert the legal process. For example, in *Nevada Credit Rating Bureau v. Williams*,[80] the court affirmed a finding of abuse of process where a plaintiff attached an entire property worth over $30,000 to secure a debt of less than $5,000, with the ulterior purpose to coerce payment rather than to obtain security for the debt. Similarly, the court found abuse of process when a city attorney charged a police officer with a criminal violation to obtain the officer's voluntary resignation.[81] In *Bull v. McCuskey*, an attorney brought an action for malpractice against a doctor, but did no research on the case and did not retain any experts or submit evidence from any doctors during trial.[82] The Supreme Court of Nevada found

---

[75] *LaMantia v. Redisi*, 38 P.3d 877, 880 (Nev. 2002).

[76] *Land Baron Inv. v. Bonnie Springs Family LP*, 356 P.3d 511, 519 (Nev. 2015).

[77] *Dutt v. Kremp*, 844 P.2d 786, 790 (Nev. 1992), *overruled on other grounds by LaMantia*, 38 F.3d at 880.

[78] *Laxalt v. McClatchy*, 622 F. Supp. 737, 752 (D. Nev. 1985).

[79] *Id.*

[80] 503 P.2d 9, 12-13 (Nev. 1972).

[81] *Posadas v. City of Reno*, 851 P.2d 430, 445 (Nev. 1993).

[82] *Bull v. McCuskey*, 615 P.2d 957, 960 (Nev. 1980), *abrogated on other grounds by Ace Truck & Equip. Rentals, Inc. v. Kahn*, 746 P.2d 132, 136 (Nev. 1987).

sufficient evidence to support a verdict against the attorney for abuse of legal process (i.e., filing a complaint and summons) by his actions following service of the lawsuit, which demonstrated that he brought the claim to coerce a nuisance settlement.[83]

The Laforges allege that all of the defendants conducted a willful act in the use of the legal process by "attempting to collect the unlawful rates of interest and by prosecuting an action based on unlawful collection practices."[84] The defendants argue that the allegations show they filed the complaint and sought default judgment "in a legitimate attempt to recover all contractual damages owed by [the Laforges]."[85] Based on the sparse pleadings and arguments before me, I agree. The Laforges do not claim that any of the defendants pursued the allegedly unlawful fees with the intent to coerce the Laforges into paying the rest of her debt, or for any other nefarious purpose. Nothing in the complaint alleges that the defendants filed the lawsuit for any purpose other than to resolve a legal dispute. I grant the Laforges leave to amend their abuse of process claim if they can add additional facts alleging that the defendants undertook improper, willful acts in the state court action with an ulterior purpose.

**I. Deceptive trade practices**

The NDTPA is codified at Nevada Revised Statutes Chapter 598. If a party is found to have engaged in a "deceptive trade practice" under the NDTPA, it may be subject to civil liability under Nevada Revised Statutes § 41.600, which allows victims of consumer fraud to sue for damages, equitable relief, and attorney's fees. The Laforges allege that all of the defendants "engaged in unfair or deceptive acts or practices in the conduct of its commerce or trade through its unfair and deceptive debt collection and litigation activities in violation of NRS Chapter 598."[86]

---

[83] *Id*.; *see Laxalt*, 622 F. Supp. at 752 (discussing *Bull*'s holding).
[84] ECF No. 1 at 7.
[85] ECF No. 14 at 15.
[86] ECF No. 1 at 7.

Chapter 598 contains ten sections, each defining a separate set of deceptive practices.[87] Each of those sections further enumerates categories of conduct, some identifying as many as 16 sub-categories of prohibited acts.[88] Merely alleging a general violation of Chapter 598 is insufficient to give the defendants notice of the prohibited conduct they engaged in or the provisions they allegedly violated.

In the errata to their opposition to Langsdale's motion, the Laforges contend that the specific NDTPA provisions Langsdale violated include, but are not limited to § 598.0923(3), § 598.0923(2), and § 598.0915(15).[89] The Laforges' complaint does not allege any facts to support a claim under any of these sections. However, I will consider them to determine whether amendment to include claims based on these provisions would be futile.

Section 598.0923(3) states that a person engages in a "deceptive trade practice" when he or she "violates a state or federal statute or regulation relating to the sale or lease of goods or services." The defendants argue that the FDCPA is not a statute "relating to the sale or lease of goods or services," and therefore any alleged violation of the FDCPA cannot form the basis of a claim under § 598.0923(3). The Laforges contend that their claims "related to the purchase of services" so the violation of the FDCPA would also violate § 598.0923(3).[90]

The FDCPA was enacted to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."[91] It regulates debt collection practices, not the sale or lease of

---

[87] *See generally*, Nev. Rev. Stat. §§ 598.015, 598.016, 598.017, 598.018, 598.092, 598.0921, 598.0922, 598.0923, 598.0924, and 598.0925.

[88] *Id.*

[89] *See* ECF No. 17.

[90] The Laforge's counsel sloppily copied and pasted his argument from a brief in a different lawsuit asserting the same position. *See* ECF No. 17-1 at 21-22 ("Ms. Cox purchased medical services, bringing her claims within the wide ambit of the FDCPA . . . ."). The Laforges did not purchase medical services.

[91] 15 U.S.C. § 1692(e).

goods and services. The fact that the Laforges' debt may have stemmed from the purchase of goods does not transform the FDCPA into a "statute . . . relating to the sale or lease of goods or services." The Laforges cannot state a claim under § 598.0923(3) based on the defendants' alleged FDCPA violations.

Nor have the Laforges stated a claim under § 598.0923(2). A person violates § 598.0923(2) when he or she "fails to disclose a material fact in connection with the sale or lease of goods or services." But the defendants' alleged debt collection efforts were not in connection with the sale or lease of goods or services.[92] The defendants were pursuing litigation to collect on the Laforges' pre-existing debt. Thus, the Laforges' allegations, even taken as true, cannot establish that the defendants engaged in a deceptive trade practice under § 598.0923(2).

Finally, the Laforges do not provide any factual allegations to support a claim under § 598.0915(15), which is violated when a person "knowingly makes any other false representation in a transaction," or any other provision of the NDTPA. I grant the defendants' motions to dismiss the Laforges' NDTPA claim with leave to amend if they can allege facts showing that the defendants violated the NDTPA.

### J. Civil Conspiracy

The defendants argue that the Laforges' civil conspiracy claim fails because all of their other claims fail.[93] Because I grant the Laforges leave to file an amended complaint as to their § 1692g, NDTPA, and abuse of process claims, that argument is unpersuasive. However, as presently written, the Laforges' civil conspiracy claim contains only conclusory statements and formulaic recitations of the elements of civil conspiracy.[94] It merely states that "the defendants undertook a concerted action with the intent to commit the Collection Fee Violations, the 1692(g)

---

[92] Arguably, the Laforges' interactions with defendant RC Willey may relate to the sale of goods and services under the NDTPA. However, the Laforges allege no facts against RC Willey other than the general assertions that it entered into a contract with the Laforges and upon realizing that the Laforges were delinquent on their debt, assigned the debt to AcctCorp for collection. Nothing in those facts alleges any violation of the NDTPA.

[93] ECF No. 14 at 18.

[94] *See Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678.

Violations, and the Interest Fees Violations."[95] It is unclear which facts alleged in the complaint support this claim. I dismiss the Laforges' civil conspiracy claim but grant them leave to amend it if they can properly allege sufficient facts to support such a claim.

### III. CONCLUSION

IT IS THEREFORE ORDERED that defendant AcctCorp's motion to dismiss **(ECF No. 14) is GRANTED**. The plaintiffs' FDCPA claims relying on the contractual collection fee violations, interest fee violations, and default judgment violations are dismissed with prejudice as time-barred. The plaintiffs are granted leave to amend their claims for § 1692g violations, abuse of process, deceptive trade practices, and civil conspiracy claims if they have sufficient facts to allege such claims. The plaintiffs must file and serve an amended complaint consistent with this order **on or before February 13, 2018**.

IT IS FURTHER ORDERED that defendant Lansgdale's motion to dismiss **(ECF No. 9) is GRANTED IN PART and DENIED IN PART as moot.** Langsdale's motion to dismiss the plaintiffs' FDCPA claims (except the § 1692g claim) is denied as moot because those claims are time-barred and have been dismissed. I grant Langsdale's motion to dismiss the plaintiffs' § 1692g, abuse of process, deceptive trade practices, and civil conspiracy claims with leave to amend as set forth above.

IT IS FURTHER ORDERED that Langsdale's motion to strike **(ECF No. 22) is DENIED.**

IT IS FURTHER ORDERED that the pending motions for summary judgment **(ECF Nos. 53 and 54) are DENIED without prejudice as moot.**

DATED this 23rd day of January, 2018.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE

---

[95] ECF No. 1 at 8.